UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DERRICK M. HAMILTON,

                                        Plaintiff,

        v.                                                      9:18-CV-1312
                                                                (MAD/CFH)

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et. al.,

                                        Defendants.
_____

APPEARANCES:

DERRICK M. HAMILTON
89-A-5202
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

MAE A. D'AGOSTINO
United States District Judge

**DECISION AND ORDER**

I.      **INTRODUCTION**

        Pro se plaintiff Derrick M. Hamilton ("Plaintiff") commenced this action by filing a

Complaint asserting claims arising out of his confinement in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS") at Auburn

Correctional Facility ("Auburn C.F.").  Dkt. No. 1 ("Compl.").  In the original Complaint, Plaintiff

identified the following individuals as defendants:  Commissioner Anthony J. Annucci

("Annucci"), Superintendent Harold Graham ("Graham"), Prison Guard A. Venditti ("Venditti"),

1

and Prison Guard Delfavero ("Delfavero"). *Id.* at 1-3. Plaintiff also named DOCCS as a defendant. *Id.*

By Decision and Order filed December 17, 2018 (the "December Order"), this Court reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and dismissed the following claims, with prejudice: (1) claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for monetary damages against DOCCS and defendants in their official capacity; (2) claims pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") against defendants in their individual capacity and RLUIPA claims for monetary damages and declaratory judgment against defendants in their official capacities; and (3) claims asserted pursuant to various United States Treaties. Dkt. No. 4. The Court also dismissed the following claims, without prejudice: (1) First Amendment religious claims; (2) equal protection claims; (3) retaliation claims; (4) claims for injunctive relief; and (5) New York State Constitutional claims. *Id.* In light of his pro se status, Plaintiff was afforded an opportunity to submit an amended pleading with respect to the claims that were dismissed without prejudice. *Id.* at 24.

Currently before the Court is Plaintiff's Amended Complaint. Dkt. No. 15 ("Am. Compl.").

## II.    LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the December Order and will not be restated here. *See* Dkt. No. 4 at 2-4. Taking into account Plaintiff's pro se status, the Court construes the allegations in the Amended

Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## III.   SUMMARY OF AMENDED COMPLAINT[1]

In the Amended Complaint, Plaintiff asserts new claims and realleges previously dismissed claims against Annucci, Graham, Venditti, and Delfavero. Plaintiff also asserts claims against the following new defendants: Deputy Commissioner of Program Services Jeff McKoy ("McKoy"), Director of Division of Ministerial, Family, and Volunteer Services ("DMFVS") Cheryl Morris ("Morris"), Assistant Director of DMFVS Paul Guenette ("Guenette"), Chaplain Marcia Stewart ("Stewart"), Chaplain Wayne Rose ("Rose"), Director of Inmate Grievance Program ("IGP") Karen Bellamy ("Bellamy"), Director of IGP Shelly Mallozzi ("Mallozzi"), Superintendent Timothy McCarthy ("McCarthy"), Deputy Superintendent of Program Services G. Schenk ("Schenk"), Steward D. Vanni ("Vanni"), Assistant Food Service Administrator, A. Bertonica ("Bertonica"), Lieutenant Kelsey ("Kelsey"), Watch Commander John Doe #1 ("WC John Doe #1"), Watch Commander John Doe #2 ("WC John Doe #2"), Watch Commander John Doe #3 ("WC John Doe #3"), Senior Chaplain Deacon

---

[1] The Amended Complaint includes exhibits. *See* Am. Compl. at 90-96. To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference). Additionally, Plaintiff's original Complaint included exhibits. *See* Compl. at 15-28. In the Amended Complaint, Plaintiff incorporated, by reference, the same exhibits attached to the original Complaint, but failed to actually attach the exhibits to the Amended Complaint. "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint." *Wellington v. Langendorf*, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To require Plaintiff to file an Amended Complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Alexander v. U.S.*, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D.Cal. Aug. 5, 2013). Because Plaintiff is proceeding pro se, the Court will consider the exhibits and documentation attached to the original Complaint as incorporated by reference in the Amended Complaint.

John Tomandl ("Tomandl"), Prison Guard S. Pino ("Pino"), Prison Guard John Doe #1 ("PG John Doe #1"), Sergeant Porten ("Porten"), Sergeant Doe ("Sgt. Doe"), North Yard Supervisor Jay Doe ("Yard Supervisor Jay Doe"), Prison Guard James Doe ("PG James Doe"), Inmate Organization Coordinator ("IOC") Dave Porter ("Porter"), Recreation Program Leader ("RPL") Ron Pitoniak ("Pitoniak"), and RPL Travis Silcox ("Silcox").[2] *See* Am. Compl. at 1, 6-10. The Amended Complaint does not include any claims against DOCCS.[3] The facts are set forth as alleged by Plaintiff in his Amended Complaint.

## A. Background

Pursuant to DOCCS' Directive #4202, the DMFVS is responsible for ensuring that all religious programs are carried out in accordance with the established tenets and practices of the faith. Am. Compl. at 26.

In 1991 or 1992, DOCCS hired Ascento Fox ("Fox") as the Senior Rastafari Chaplain. Am. Compl. at 11. While Fox was employed as the Chaplain, DOCCS aligned its policies with the "Lived Tenets Rastafari Ecclesiastical Order." *Id*. at 51-52. Specifically, with respect to the blessing, handling, preparation, and distribution of food, DOCCS' policy provided that "food is to be prepared by a faith group member and people who are not initiates of the faith should not be allowed to handle, prepare, or distribute the food." *Id*. at 52. After Fox departed, Annucci "rewrote" the policy to "exclude the sanctity of [Rastafari] food preparation, handling, and distribution."[4] *Id*.

In 2012 and 2013, Annucci, McKoy, Morris, and Guenette began rewriting the tenets of

---

[2]     The Clerk of the Court is directed to add these defendants to the docket report for this action.

[3]     The Clerk of the Court is directed to terminate DOCCS as a defendant.

[4]     Plaintiff has not plead when Fox departed.

4

Rastafari order. Am. Compl. at 13-14. Defendants implemented a policy that prevented inmates with "significant knowledge" of the Rastafari tenets and beliefs from acting as "clerks." *Id.* at 12. By eliminating clerks, Annucci, McKoy, Morris, and Guenette assumed "authority " over the community and assigned chaplains of other denominations to advise the Rastafari community. *Id.* at 12-14. Defendants allowed "cultural vultures" or "undesirables" such as gang members, homosexuals, and mentally challenged individuals into the "sacred order." *Id.* at 14. These "cultural vultures" were only interested in receiving special meals and avoiding DOCCS' rules related to the length of their hair. Am. Compl. at 11-12. Annucci also hired Stewart and Rose as Rastafari chaplains in an effort to introduce the "state's pro-homosexual" views into the Rastafari order. *Id.* at 15. Additionally, Annucci, McKoy, Morris, and Guenette removed "Negust Day" from the Rastafari practice.[5] *Id.* at 14.

Plaintiff, a practicing Rastafari since birth, filed grievances claiming that Annucci, McKoy, Morris, and Guenette violated the Establishment Clause and unconstitutionally re-wrote and created tenets for Rastrafarians.[6] Am. Compl. at 14-15, 16. Plaintiff also filed grievances challenging the decision to remove Negust Day as a High Holy Day.[7] *Id.* at 15. In 2013, Plaintiff filed an Article 78 petition in New York State Supreme Court, Albany County, challenging the removal of Negust Day from the Rastafari practice. *Id.* at 14. The matter was declared "moot" and Annucci was compelled to reintegrate Negust Day into the practice. *Id.*

   **B.    Facts Related to Plaintiff's Confinement at Auburn C.F. from November**

---

[5]    Negust Day is a principle that is a "sincerely held Rastafari belief" and annually commemorated on October 7th. Am. Compl. at 14-15.

[6]    The Amended Complaint does not include facts related to where or when these grievances were filed.

[7]    *See* Footnote 5, *supra*.

**2015 through March 2016**

On October 21, 2015, Plaintiff was transferred from the Special Housing Unit ("SHU") at Great Meadow Correctional Facility to the SHU at Auburn C.F. Am. Compl. at 15. Upon arriving at Auburn C.F., Plaintiff wrote to Graham advising that his disciplinary sanctions ended on October 30, 2015. *Id*. Plaintiff also wrote to Tomandl, the Rastafari staff advisor, and asked to be placed on all Rastafari call-outs, classes, and services[8] (including Transfiguration Day). *Id*. at 16. Plaintiff expected other members of his community to commemorate Transfiguration Day on November 2, 2015. *Id*. at 11-16. Plaintiff did not receive any response to his correspondence. Am. Compl. at 16-17.

On October 30, 2015, Plaintiff informed SHU staff that his SHU time was complete and presented his disposition sheet as evidence. Am. Compl. at 17. The supervisor informed Plaintiff, "you've pissed somebody off" and, pursuant to Graham's orders, Plaintiff would not be released until the next day. *Id*. On October 31, 2015, Plaintiff was released from the SHU and transferred to cell D-3-11. *Id*.

On November 2, 2015, Plaintiff asked Delfavero for permission to attend Transfiguration Day. Am. Compl. at 17. Delfavero and Venditti refused to allow Plaintiff to attend because he was listed "as a Jew" on the D-Block census. *Id*. at 18. Plaintiff objected to being "branded Jewish," claiming that it endangered Plaintiff's life, health, and well-being.[9] *Id*. at 21. Plaintiff also attempted to explain to Defendants the importance of Transfiguration Day to the practice of his sincerely held Rastafari beliefs. *Id*. at 19. Plaintiff asked

---

[8]     Plaintiff describes services as "Nyahbinghi". Am. Compl. at 16.

[9]     According to DOCCS' block census, the inmate who previously occupied cell D-3-11 was Jewish. Am. Compl. at 28-29.

Defendants to contact the Chaplain's Office, but Defendants threatened Plaintiff with a misbehavior report. Am. Compl. at 19. As a result of Defendants' actions, Plaintiff was deprived of the opportunity to practice the highest form of Rastafari worship. *Id*. at 19-20. Additionally, Defendants' interceded and prevented other inmates from delivering the Transfiguration Day sacramental meal to Plaintiff. *Id*. at 20; Compl. at 21.

On November 20, 2015, Plaintiff filed a grievance (AUB-68310-15) complaining that Graham retaliated against him and violated his First Amendment religious rights. Am. Compl. at 22; Compl. at 16-19. Specifically, Plaintiff complained that Graham's decision to retain Plaintiff in the SHU for an extra day resulted in Plaintiff being falsely identified as a "Jew" and prevented Plaintiff from observing Transfiguration Day. *Id*. Graham denied the grievance and Plaintiff appealed to the Central Office Review Committee ("CORC"). Compl. at 24, 27. On March 2, 2016, CORC issued a decision "unanimously" accepting the grievance, in part. *Id*. at 28. CORC noted that Plaintiff completed his disciplinary sanctions on October 30, 2015 and was moved to another cell on October 31, 2015, "when it became available." *Id*. CORC also noted that Plaintiff's religion of record was Rastafarian. *Id*.

On December 27, 2015, at 10:00 a.m., Graham ordered WC John Doe #1 to escort Plaintiff to the "penalty box" in the North Yard to await Rastafari services. Am. Compl. at 22. At 10:20 a.m., Plaintiff was released and permitted to enter the chapel for services but was advised that his "time was up at 10:25 a.m." *Id*. On the same day, prisoners belonging to the Nation of Gods and Earths ("NOGE") and Protestant inmates were allowed to study from 1:00 p.m. until 2:45 p.m. and to attend services from 7:00 p.m. until 9:30 a.m. *Id*. at 22-23. Plaintiff filed a grievance (AUB 68521-15) related to the incident. *Id*. at 23.

On February 14, 2016, Graham ordered WC John Doe #2 and Yard Supervisor Jay

Doe to detain Plaintiff in the "penalty box" to await Rastafari services. Am. Compl. at 23, 31-32. Plaintiff, who suffers from asthma, was forced to endure sub-zero temperatures, for approximately one hour. *Id.* Plaintiff began to experience difficulty breathing and tried to use his inhaler but, the aerosol was frozen. *Id*. Eventually, guards allowed only five Rastafari inmates to enter the chapel at one time while Protestants inmates were sent to the chapel "en masse." *Id*. When Plaintiff finally entered the chapel, Pino questioned Plaintiff's religious beliefs. Am. Compl. at 23.

On February 21, 2016, PG John Doe questioned Plaintiff's religious beliefs regarding gay marriage and homosexuality. Am. Compl. at 24. PG John Doe told Plaintiff that Graham intended to charge Plaintiff with "hate speech and unauthorized religious speech" because Plaintiff was not the "chosen facilitator." *Id*. Plaintiff was compelled to explain his religious beliefs to PG John Doe. *Id.* at 25. PG John Doe responded, "[s]ince this is not going to stop on its own, I'm going to report it." Am. Compl. at 25.

On February 25, 2016, Tomandl, PG John Doe, and Porten, acting upon Graham's order, attempted to remove Plaintiff from all Rastafari call outs by threatening the assigned Inmate Facilitator. Am. Compl. at 25. Plaintiff filed a grievance (AUB 68944-16) claiming that Defendants were attempting to "silence" him. *Id*. While investigating the grievance, Porten prepared a false report claiming that the Inmate Facilitator was unaware of any problems and that services were "running smoothly." *Id*. at 26-27. Porten also threatened Plaintiff, on Graham's behalf, with SHU confinement if he attempted to participate in Rastafari services. *Id*. at 27. As a result of Porten's threat, Plaintiff's "once close Brethren," abandoned him. Am. Compl. at 27.

### C.     Christmas Day - December 2016

On December 25, 2016, at 8:45 a.m., Plaintiff asked PG James Doe if Rastafari services would be held at the usual time. Am. Compl. at 39. PG James Doe laughed and responded that only Christian services were being held that day. *Id*. At 10:45 a.m., Plaintiff was released from his cell for a meal and made an attempt to discuss the issue with WC John Doe #3 and Sgt. Doe. *Id*. Sgt. Doe responded, "You're about the fourth one to ask. It's a holiday, where's your Christmas spirit? It's a white Christmas! Have a happy jolly one enjoy your lunch." *Id*. From 7:00 p.m. until 9:30 p.m, Plaintiff witnessed Protestant inmates released from the same cell block to attend services in the chapel. Am. Compl. at 41.

On December 30, 2016, Plaintiff filed a grievance (AUB 70769-17) related to the incident. Am. Compl. at 41. Graham issued a decision conceding that Rastafari services were on the "callout" and should have been held as scheduled. *Id*. Plaintiff appealed Graham's decision to CORC. *Id*. One year and nineteen days after receipt of the appeal, Mallozzi issued a fraudulent decision and noted that, "Rastafari services were not held on 12/25/16 due to a staff shortage on the holiday." *Id*. at 41-42.

### D. Caribbean African Unity

During the relevant time, Plaintiff was the president of the Caribbean African Unity ("CAU"), a cultural organization that addressed the needs of Auburn C.F. inmates of African, Carribean, Central, and South American ancestry. Am. Compl. at 66. Pursuant to DOCCS' Directive #4760, all cultural organizations must contribute a minimum of fifty percent of any profit to the Inmate Occupational Therapy Fund ("IOTF"). *Id*. Pursuant to the Directive, the formula for profit is the income generated from any fund raising event less the expense of the event. *Id*. Membership dues were not included in the profit analysis. *Id*. Schenk, who was responsible for supervising all cultural organizations at Auburn C.F., implemented new

guidelines that contradicted Directive #4760. Am. Compl. at 66-67. For example, Schenk demanded that membership dues be included in the profit calculation and that organizations make quarterly contributions rather than one fiscal year contribution. *Id.*

In August 2017, Plaintiff began to notice accounting errors in the CAU account and "question[ed] the illegal siphoning of funds[.]" Am. Compl. at 67. Shortly thereafter, Plaintiff received a memorandum from Pitoniak stating that the CAU was not in compliance with DOCCS' directives related to membership quotas. *Id.* at 67-68. As a result, Pitoniak placed the CAU on a 60-day probationary period. *Id.*

In September 2017 and October 2017, Plaintiff discovered discrepancies in the CAU's trust account and addressed the matter with Pitoniak and Porter. Am. Compl. at 68. Plaintiff was advised "not to make a big stink." *Id.*

In October 2017, Pitoniak approached members of the CAU and attempted to enlist them in a plan to remove Plaintiff as President of the CAU. Am. Compl. at 69-70. Pitoniak told the members that Plaintiff "wrote up a bunch of [expletive] on us" and that Porter and Schenk "want him out" because he questioned how much money the CAU paid to the Inmate Liaison Committee. *Id.* at 70. When the members refused, Pitoniak responded, "That doesn't matter, I already have Morris ready to do it for me." *Id.* Plaintiff filed a grievance (AUB 74417-18) related to the incident. *Id.*

On December 4, 2017, Plaintiff wrote to Schenk and explained that the CAU had not received monthly financial statements and was unable to account for transactions. Am. Compl. at 69.

On January 4, 2018, at approximately 2:10 p.m., Plaintiff and Pitoniak met in the staff office in the gymnasium to discuss the goals of the cultural organizations. Am. Compl. at 69.

Pitoniak began screaming racial slurs at Plaintiff. *Id*. Plaintiff filed a grievance (AUB 73415-18) against Pitoniak. *Id*. Porter was assigned to investigate the grievance and filed a perjured statement in favor of Pitoniak. *Id*. As a result, Plaintiff filed a grievance against Porter (AUB 73649-18. Am. Compl. at 69.

In February 2018, Plaintiff wrote to Vanni requesting an audit of the CAU account. Am. Compl. at 69. In a "face to face conversation," Vanni promised to conduct the audit, "as soon as possible." *Id.* The audit was never conducted. *Id*.

On June 5, 2018, Plaintiff sent a memorandum to Vanni after discovering that $91.00 in membership dues was counted as sales and subjected to Defendants' "illegal profit tanking." Am. Compl. at 70. Vanni did not respond. *Id*.

In June 2018, Plaintiff made repeated verbal and written complaints to Vanni, Porter, Silcox, and Pitoniak claiming that money was illegally withdrawn from the CAU account and reported that food purchased for membership meetings was stolen. Am. Compl. at 71-72. Throughout June 2018, Plaintiff's regularly scheduled weekly meetings with Pitoniak were canceled, orders for fund raisers were not processed or fulfilled, and membership dues were not collected. *Id*. at 72. Effectively, the CAU was administratively "stifled." *Id*. at 73.

On September 6, 2018, Silcox issued a memorandum announcing that the CAU was suspended. Am. Compl. at 73. On October 3, 2018, Plaintiff filed a grievance (AUB 75138-18) claiming that the staff retaliated against the CAU and misappropriated funds. *Id*. Silcox fabricated a report related to his investigation of AUB 75138-18. Am. Compl. at 74-75.

On October 4, 2018, Silcox threatened Plaintiff with SHU confinement if he continued to correspond on behalf of the CAU. Am. Compl. at 74. On October 7, 2018, Plaintiff wrote to Annucci and recounted the recent events surrounding the CAU. *Id*. On October 28, 2018,

Shenk responded to the "packet of letters" sent to "Acting Commissioner Annucci" and advised that the organization would be reimbursed for items that were not received. *Id*. Because the CAU was suspended however, the money was transferred to Schenk's IOTF purse and available for use by employees. *Id*.

### E.    Food Preparation and Service

On October 2, 2017, when Plaintiff entered the messhall to receive his "medical diet,"[10] he noticed an "openly homosexual inmate" serving the diet meals. Am. Compl. at 47. The tenets of Rastafari law prohibit the consumption of food prepared, distributed, or served by homosexuals. *Id*. Following his religious beliefs, Plaintiff opted not to eat or receive any meal prepared by a known homosexual. *Id*. On October 4, 2017, Plaintiff wrote to Bertonica and explained that Rastafaris are prohibited from eating food prepared and served by a homosexual. *Id*. at 48. Plaintiff advised that he would not "sign for" or eat the medical diet meal. Am. Comp. at 48. Bertonica responded in a written memorandum and stated that all servers are "properly trained in the safe and hygiene [sic] handling of foods and serving areas." *Id*.

On October 16, 2017, Plaintiff wrote to Bertonica and reiterated his sincerely held beliefs and right not to "buy into the state-mandated perception of homosexuality as normal generative human behavior." Am. Compl. at 48. On October 19, 2017, Bertonica issued a misbehavior report charging Plaintiff with missing meals. *Id*. at 48. In total, Plaintiff was deprived of twenty "medically significant meals." *Id*. at 49.

On October 25, 2017, Plaintiff filed a grievance (AUB 73025-17) against Annucci and

---

[10]    Plaintiff's diet was "drug-free medical therapy" as treatment for high cholesterol. Am. Compl. at 47.

Bertonica accusing them of "nefarious use of despicable means . . . to coerce me into accepting and participating in the state's homosexual agenda." Am. Compl. at 49. After the grievance was denied, Plaintiff appealed to CORC. *Id*. at 53. Mallozzi falsified the record and denied the appeal. *Id.*

On November 2, 2017, Plaintiff attended a disciplinary hearing related to the misbehavior report. Am. Compl. at 49. Kelsey presided over the hearing however, Plaintiff's guilt was "predetermined." *Id*. Plaintiff asserted that the misbehavior report was issued in retaliation for Plaintiff exercising his sincerely held Rastafari beliefs. *Id*. at 50. Plaintiff asked Kelsey to call Stewart as a witness, but Kelsey denied the request as "immaterial." *Id*. As Plaintiff began to testify in his defense, Kelsey stopped the hearing and directed Plaintiff to leave the room so that he could place a telephone call to McCarthy. Am. Compl. at 50. When Plaintiff was recalled, the hearing resumed and he was found guilty of all charges. *Id*. at 51. Plaintiff appealed the determination to Graham and Graham's designee, McCarthy, affirmed. *Id.* Plaintiff was directed to pay at "$5.00 surcharge and $10.35 for missed meals." *Id*.

### F.    Causes of Action

Construing the Amended Complaint liberally,[11] Plaintiff asserts the following: (1) First Amendment retaliation claims; (2) First Amendment claims related to the free speech and the

---

[11]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

right to petition; (3) First Amendment free exercise claims; (4) First Amendment claims related to violations of the Establishment Clause; (5) Fourth Amendment claims; (6) Eighth Amendment claims; (7) Ninth Amendment claims; (8) Fourteenth Amendment equal protection and due process claims[12]; (9) constitutional claims based upon violations of DOCCS' directives; and (10) New York State Law and Constitutional claims.  *See generally,* Am. Compl.  Plaintiff seeks declaratory relief and monetary damages.  *See id.* at 33-38.  Plaintiff also seeks prospective and preliminary injunctive relief.  *See id.* at 37-38; 61-64; 87-88.

## IV.    ANALYSIS

### A.    Eleventh Amendment

The law related to Eleventh Amendment was discussed in the December Order and will not be restated herein.  *See* Dkt. No. 4 at 9-10.  To the extent that Plaintiff attempts to reassert section 1983 claims for monetary damages against Defendants in their official capacity in the Amended Complaint, those claims are dismissed for the reasons set forth in the December Order.

### B.    Defendants Stewart, Rose, and Pino

Plaintiff names Stewart, Rose, and Pino as defendants in the caption and list of parties.  *See* Am. Compl. at 1, 6, 8-9.  Plaintiff claims that Stewart and Rose were hired by Annucci as Rastafari Chaplains as "duplicitious conduits" to introduce the "state's pro-

---

[12]     The Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)).  To the extent that Plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice. *Horton v. Schneiderman*, No. 9:13–CV–742 (GLS/ATB), 2014 WL 2154538, at *7 (N.D.N.Y. 2014).  Because Plaintiff is imprisoned in a state institution, the Fourteenth Amendment, and not the Fifth Amendment, applies to his due process violation claims.  *See Pugliese v. Nelson*, 617 F.2d 916, 918 n.2 (2d Cir. 1980).

homosexual" policy into the Rastafari order. *See id.* at 15. Plaintiff claims that Pino

"questioned why [he] was playing so active a role in [ ] '[r]easoning' amount the Brethren[.]"

*See id.* at 23. Plaintiff however, did not attribute any of the alleged constitutional violations to

Stewart, Rose, or Pino. In the absence of factual allegations sufficient to plausibly suggest

that Defendants were personally involved in conduct that violated Plaintiff's constitutional

rights, the Amended Complaint fails to state a cognizable claim against them. *See Cipriani v.*

*Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007)

("Dismissal is appropriate where a defendant is listed in the caption, but the body of the

complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also*

*Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014)

(dismissing complaint since the plaintiff had not adequately pled the defendant's personal

involvement in any of the constitutional deprivations alleged in the amended complaint).

Accordingly, Plaintiff's claims against Stewart, Rose, and Pino are dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief

can be granted.

### C. First Amendment

#### 1. Retaliation

The law related to First Amendment retaliation claims was discussed in the December

Order and will not be restated herein. *See* Dkt. No. 4 at 16-17. In the Amended Complaint,

Plaintiff asserts retaliation claims against Graham, Bertonica, Pitoniak, Schenk, Vanni, Porter,

and Silcox, and Annucci.[13]  *See generally*, Am. Compl.

### a.    Graham

In the Complaint, Plaintiff alleged that Graham retaliated against him "on behalf of his colleagues at Great Meadow" when he detained Plaintiff for an additional day in the SHU without a valid "detention hold."  Compl. at 4, 17, 25.  In the December Order, the Court dismissed Plaintiff's retaliation claims against Graham holding:

> To the extent that Plaintiff claims that the retaliatory conduct was in response to grievances previously filed at Great Meadow C.F., the claims are nonetheless subject to dismissal. Plaintiff has failed to identify the grievances he filed which allegedly motivated Graham to retaliate against him. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *Edwards v. Bezio*, No. 9:08-CV-256(LEK/RFT), 2010 WL 681369, at *3 (N.D.N.Y. Feb. 24, 2010) (dismissing retaliation claim based on allegation that plaintiff suffered adverse action for "past and present" grievances and lawsuits, noting that plaintiff's "general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct").  "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."  *Hare v. Hayden*, No. 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases).
>
> Here, Plaintiff did not file any grievances or complaints against Graham or any staff member at Auburn C.F. prior to the alleged retaliatory conduct.  As Plaintiff has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, Plaintiff has not stated a plausible claim for retaliation against Graham in violation of the First Amendment

---

[13]    Plaintiff claims he was transferred to Auburn C.F. in retaliation for grievances against Annucci, McKoy, Guenette, and Morris related to their violations of the Establishment Clause.  *See* Am. Compl. at 15. Plaintiff has not identified the person(s) responsible or personally involved in the decision to transfer him to Auburn C.F.  Accordingly, this claim is not sufficiently plead.

> and this claim is dismissed without prejudice pursuant to 28
> U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to
> state a claim upon which relief may be granted.

Dkt. No. 4 at 18-19.

In the Amended Complaint, Plaintiff alleges that Graham ordered Plaintiff held in the SHU for an extra day in retaliation for grievances Plaintiff filed against Morris, Guenette, McKoy, and Annucci and in response to his "exercise of [his] constitutional protected right" to speak against Annucci's violation fo the Establishment Clause. *See* Am. Compl. at 15, 29. Despite the fact that Plaintiff was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to this claim. For the reasons set forth in the December Order, Plaintiff's retaliation claim against Graham is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b.    Bertonica

Plaintiff claims that Bertonica issued a false misbehavior report in retaliation for Plaintiff's free exercise of his Rastafari beliefs. *See* Am. Compl. at 50. At this juncture, Plaintiff has sufficiently plead a First Amendment retaliation claim against Bertonica to warrant a response. *See Parks v. Smith*, No. 908-CV-0586 (TJM/GHL), 2009 WL 3055278, at *1 (N.D.N.Y. Sept. 23, 2009) (finding that the exercise of religion could constitute protected conduct). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### c.    Pitoniak, Schenk, Vanni, Porter, Silcox, and Annucci

Plaintiff claims that Pitoniak suspended the CAU because Plaintiff "questioned the

illegal taking of 50% of [CAU] sales." *See* Am. Compl. at 75. Plaintiff also alleges that Vanni, Porter, and Silcox, refused to process purchase orders, membership dues, and callouts and that Schenk authorized the suspension of the CAU because Plaintiff filed grievances related to the "illegal seizure of [his] property" and grievances "necessary to safeguard CAU's funds." *See id.* at 75-79. Plaintiff also claims that Annucci retaliated against him because Annucci failed to remedy the constitutional violations after being informed of Defendants' "embezzlement scam." *See id.* at 80.

At this juncture, Plaintiff has sufficiently plead a retaliation claim against Pitoniak, Schenk, Vanni, Porter, and Silcox to require a response. *See Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 731 (W.D.N.Y. 2015) (theft of the plaintiff's commissary may be construed as an adverse action). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the retaliation claim against Annucci. Courts in this District have held that letters to supervisors and his responses (via his subordinates) do not satisfy the personal involvement requirement. *DeMeo v. Koenigsmann*, No. 11 Civ. 7099, 2015 WL 1283660, at *16 (S.D.N.Y. Mar. 20, 2015) (holding that prisoner letters sent to Dr. Koenigsmann, which were referred to and responded to by subordinates, did not establish Koenigsmann's personal involvement); *see also Yearney v. Sidorowicz*, No. 13 Civ. 3604, 2014 WL 2616801, at *9 (S.D.N.Y. June 10, 2014) (reasoning that Dr. Koenigsmann's subordinate, writing on his behalf, was insufficient to establish Dr. Koenigsmann's personal involvement); *see also Brantley v. Fischer*, No. 12-CV-1051, 2013 WL 5466790, at *9 (N.D.N.Y. Sept. 30, 2013) (holding that the receipt of a letter by Koenigsmann's subordinate which stated that, "Dr. Koenigsmann, Chief Medical Officer, has

18

asked me to respond to your recent letter concerning your health care issue," was insufficient to establish supervisory liability).

Accordingly, Plaintiff's retaliation claim against Annucci is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Free Speech

Plaintiff claims that Porten and Kelsey violated his right to freely speak against "DOCCS' pro-homosexual agenda." *See* Am. Compl. at 25, 56.   Plaintiff also contends that Vanni violated his right to speak on behalf of the CAU and that Silcox "undermind[ed] his right to speak out against the unlawful and unreasonable seizure of [his] property." *See id.* at 78-79.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "Because of security concerns inherent in correctional facilities, the First Amendment's protection of communication is not without restriction." *Pitsley v. Ricks*, No. 9:96–CV–0372 (NAM/DRH), 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) (citing *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir.1975)). A prisoner's right to free speech is more limited than the right of a non-prisoner, but still any restrictions on the prisoner's First Amendment rights must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"In order to state a claim for deprivation of a constitutional right to communication, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct." *Pitsley*, 2000 WL 362023, at *3 (citation omitted).  "[P]laintiffs who allege a

19

violation of their right to free speech must prove that (1) defendants silenced him or (2) 'defendant[s'] actions had some actual, non-speculative chilling effect' on his speech." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (citing *inter alia, Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)).

Here, Plaintiff has not plead that he suffered "prejudice or actual injury." Indeed, throughout the Amended Complaint, Plaintiff claims that he repeatedly and continually voiced his objections to DOCCS' policies and filed several complaints regarding staff behavior with numerous grievances and written correspondence. Thus, as presently plead, the Amended Complaint does not suggest that Defendants "chilled his speech or otherwise prevented him from speaking." *See Williams*, 535 F.3d at 78; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.") (citation omitted).

Accordingly, Plaintiff's First Amendment free speech claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Freedom to Petition

Plaintiff alleges that Annucci, Bellamy, and Mallozzi violated his First Amendment right to petition the government because the grievance process is "corrupt," "irreparably biased," and "operated as a dead end." *See* Am. Compl. at 27-28, 33, 45-46, 53, 60-61.

It is well-established that a prison inmate has no constitutional right of access to an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance

process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Accordingly, Plaintiff's First Amendment freedom to petition claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise of Religion

The law related to First Amendment Free Exercise Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 11-12. In the December Order, the Court dismissed Plaintiff's First Amendment claims holding:

> Plaintiff [ ] alleges that Venditti and Delfavero refused to allow Plaintiff to attend a religious service and denied Plaintiff a religious meal on November 2, 2015 violating Plaintiff's First Amendment rights. Compl. at 4-6. As presently plead, the Complaint lacks facts suggesting that Plaintiff's religious beliefs were "sincerely held." Moreover, Plaintiff has not plead facts establishing that defendants created a substantial burden on his religion or prevented him, in other ways, from practicing his religion. The Complaint was filed in November 2018, nearly three years after the alleged incidents, and is conspicuously devoid of references to any other violations to Plaintiff's religious freedoms before or after the incidents in November 2015. The isolated incidents on November 2, 2015 "are not representative of larger, systematic deprivations [and] are constitutionally de minimis and do not rise to a level sufficient to support a First Amendment claim." *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at *4 (N.D.N.Y. May 31, 2016) (citation omitted); *see also Williams v. Weaver*,

No. 9:03-CV-0912 (LEK/GHL), 2006 WL 2794417, at *5, n. 29 (N.D.N.Y. Sept. 26, 2006) (granting the defendant's motion for judgment on the pleadings with respect to prisoner's First Amendment free-exercise claim that defendant caused prisoner to miss two weekly religious services); *Cancel v. Mazzuca*, 205 F.Supp.2d 128, 142 (S.D.N.Y. 2002) (granting defendant's Rule 12(b)(6) motion to dismiss prisoner's First Amendment free-exercise claim that defendant "prevented him, on one occasion, from attending a religious service"); *Gill v. DeFrank*, 8 Fed. App'x 35, 37 (2d Cir. 2001) (affirming lower court dismissal of First Amendment claim holding "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion."); *see Butler v. Hogue*, No. 9:08-CV-0264 (GLS/DRH), 2010 WL 4025893, at *4 (N.D.N.Y. Feb. 4, 2010) (dismissing First Amendment claim based upon allegations that the plaintiff missed two of six meals in a two day period, with no other complaints of prior problems "before, or after, during his tenure at Upstate.").[14]

Dkt. No. 4 at 14-15.

In the Amended Complaint, Plaintiff, a Rastafari "since birth," clearly identifies and explains his religious beliefs. *See generally,* Am. Compl. Accordingly, at this juncture, Plaintiff has sufficiently alleged that he held a sincere religious belief.

### a.   Graham, Tomandl, Venditti, Delfavero,  WC Doe #1, and Porten

"[P]risoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993) (citations omitted). While the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, . . . prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible." *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.1989) (citations omitted).

---

[14]     The Court also dismissed the First Amendment religious claims against Graham for failure to plead personal involvement for purposes of § 1983. *See* Dkt. No. 4 at 13.

In the Amended Complaint, Plaintiff asserts the following Free Exercise claims related to incidents that occurred in November 2015 and December 2015:

- Graham's failure to release Plaintiff from the SHU on October 30, 2015 resulted in Plaintiff being falsely identified as a "Jew" and a violation of Plaintiff's constitutional right to practice his religion;

- Tomandl, Venditti, and Delfavero refused to allow Plaintiff to attend the Transfiguration Day service and denied him the opportunity to partake in the Transfiguration Day meal, as an alternative means of observing the holiday;

- Plaintiff claims that Graham and WC John Doe #1 violated his right to the free exercise on December 27, 2015 because he was afforded only five minutes to worship in the chapel; and

- Graham and Porten threatened Plaintiff with SHU confinement if he participated in Rastafari services or answered questions from the "Brethren."

See Am. Compl. at 16, 18-20, 22-23, 27, 31; Compl. at 17-18.

At this juncture, Plaintiff has sufficiently plead facts suggesting that a pattern and policy of discrimination and interference with his religious rights was prevalent at Auburn C.F. in November and December 2015. See Bass v. Grottoli, No. 94 CIV. 3220, 1995 WL 565979, at *4 (S.D.N.Y. Sept. 25, 1995) (allowing the plaintiff to proceed with First Amendment claim that alleged a pattern of anti-Semitic harassment and deliberate interference with religious services or instruction). Accordingly, Graham, Venditti, Delfavero, WC John Doe #1, and Porten are directed to respond to Plaintiff's First Amendment Free Exercise claims. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with regard to Plaintiff's First Amendment

23

Free Exercise claims against Tomandl. Plaintiff summarily states that he wrote to Tomandl and that he did not receive a response. *See* Am. Compl. at 16-17. The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (holding that a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement). While cognizant of *Grullon*, the Court finds that, as presently plead, Plaintiff has failed to establish that Tomandl was personally involved in any constitutional deprivation. The Amended Complaint lacks facts suggesting where the letter to Tomandl was sent or by what means the letters were forwarded. Without more, the allegations are not enough to allege that the Tomandl was personally involved in violations of Plaintiff's First Amendment rights. *See Bridgewater v. Taylor,* 698 F.Supp.2d 351, 359 (S.D.N.Y. 2010); *Guillory v. Cuomo*, 616 Fed. App'x 12, 14 (2d Cir. 2015) (summary order).

### b. PG James Doe, Sgt. Doe, and WC Doe #3

Plaintiff claims PG James Doe, Sgt. Doe and WC Doe #3 violated his First Amendment rights when they refused to allow him to attend Rastafari services on December 25, 2016. *See* Am. Compl. at 43. Generally, the inability to attend religious services, for one day, does not result in a constitutional violation. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2017 WL 9511167, at *3–4 (N.D.N.Y. Feb. 8, 2017) (citing *Boomer v. Irvin*, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997)) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights). While Plaintiff sufficiently plead

that other Defendants engaged in a pattern of First Amendment violations in November and December of 2015, as presently plead, the Amended Complaint lacks facts connecting PG James Doe, Sgt. Doe and/or WC Doe #3 to the aforementioned "pattern and practice" of interference with Plaintiff's religious rights. Moreover, the gap between the Christmas Day incident and the prior pattern is too tenuous to suggest that the conduct is associated. Indeed, the Amended Complaint lacks facts related to violations of Plaintiff's free exercise rights between December 2015 and December 2016. Because Plaintiff has not plead facts suggesting that Defendants prevented him, in other ways, from practicing his religion on December 25, 2016, the isolated incident does not give rise to a constitutional violation.

Accordingly, Plaintiff's First Amendment free exercise claims against PG James Doe, Sgt. Doe, and WC Doe #3 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Bertonica

Plaintiff claims that he wrote to Bertonica, on two occasions, explaining that he could not eat any food known to be prepared or served by homosexuals and that Bertonica "failed to act" on his complaints. *See* Am. Compl. at 48, 55. "Prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Ford*, 352 F.3d at 597. "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 204-05 (2d Cir. 2004).

At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Bertonica to warrant a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. *See Lewis v. Zon*,

25

920 F. Supp. 2d 379, 385 (W.D.N.Y. 2013) (holding that "it is the sincerity of plaintiff's beliefs and not their objective reasonableness that is relevant") (citing *Ford*, 352 F.3d at 588 (holding that " 'an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious,' regardless of whether the belief is unorthodox, irrational or even demonstrably false")).

### d. Kelsey and McCarthy

Plaintiff makes conclusory allegations against Kelsey and McCarthy related to his First Amendment right to the free exercise of his religious beliefs. *See* Am. Compl. at 56-57, 59. Because the Amended Complaint lacks facts suggesting how Plaintiff's sincerely held religious beliefs were burdened by Kelsey or McCarthy, Plaintiff's First Amendment free exercise claims against Kelsey and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### e. Annucci, McKoy, Morris, and Guenette

Plaintiff claims that Annucci, McKoy, Morris, and Guenette violated his First Amendment religious rights because they "rewrote the Rastafari ecclesiastical doctrine" related to food preparation, handling, and distribution to "accommodate DOCCS' pro-homosexual doctrine." *See* Am. Compl. at 52, 57.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008

WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[15]

The third *Colon* category provides for personal involvement where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the

---

[15]     The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

continuance of such a policy or custom." *Colon*, 58 F.3d at 873. With respect to the third

*Colon* factor, "[a] policy or custom can be explicitly established in an adopted rule or

regulation, or may exist if the 'violative practice is persistent and widespread,' and if the acts

of subordinate employees 'imply the constructive acquiescence of senior policy-making

officials.' " *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 453 (S.D.N.Y. 2004).

Liberally construing the pleading, particularly at this early juncture, Plaintiff's

allegations clearly fall into the third *Colon* category. Plaintiff alleges that Defendants

promulgated policies that rewrote "Rastafari Ecclesiastical doctrine and Divine Laws to

exclude the sanctity of our food preparation, handling, and distribution" and, thus, violated his

right to practice his chosen religion. *See Selah v. Fischer*, No. 9:09-CV-1363 (GLS/DEP),

2013 WL 5603866, at *2 (N.D.N.Y. Oct. 11, 2013) (allowing First Amendment claim against

Morris with allegations that she promulgated the policies that allegedly infringed upon the

plaintiff's right to practice his chosen religion); *see also Jones v. Annucci*, No. 16-CV-3516,

2018 WL 910594, at *9 (S.D.N.Y. Feb. 14, 2018) (allowing the plaintiff to proceed with First

Amendment claim against the Deputy Superintendent of Program Services under third *Colon*

factor because the plaintiff alleged that the Deputy instituted the policy requiring Shia inmates

to change their religion from "Islam" to "Shia") (citations omitted). At this juncture, Plaintiff

has sufficiently plead a First Amendment Free Exercise claim against Defendants to warrant

a response. In so ruling, the Court expresses no opinion as to whether this claim can

withstand a properly filed dispositive motion.

### 5. Establishment Clause

In addition to the free exercise claim, Plaintiff also claims that Defendants violated the

Establishment Clause. The First Amendment's Establishment Clause provides that

"Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I.

The Establishment Clause guarantees that the government may not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion." *Muhammad v. City of New York Dep't of Corrs.*, 904 F.Supp. 161, 197 (S.D.N.Y.1995). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Skoros v. City of New York*, 437 F.3d at 1, 39 (2d Cir. 2006) (citation omitted). A government practice satisfies the Establishment Clause, if it (1) has a secular purpose; (2) neither advances nor inhibits religion; and (3) avoids excessive entanglement between the state and religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, *reh'g denied*, 404 U.S. 876 (1971). However, in the prison setting, this test is tempered by an inmate's free exercise rights and legitimate penological interests. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

Plaintiff claims that Annucci, Graham, McKoy, Morris, and Guenette imposed "pro-homosexual policies" on the Rastafari community and that PG John Doe was an advocate for those policies. *See* Am. Compl. at 25, 26, 32-33, 37, 52. To wit, under Defendants' policies, homosexuals were permitted to handle, prepare, and distribute meals to Rastafarians during religious commemorations in violation of Rastafari tenets and the Establishment Clause. *See id.* at 32, 52.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that Plaintiff's Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe survive sua sponte review and require a response. In so ruling, the Court

expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### D.    Fourth Amendment

Plaintiff claims that Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy illegally seized his property in violation of the Fourth Amendment. *See* Am. Compl. at 77, 79, 80, 81.

While inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility." *Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979). "Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation." *Hudson v. Palmer,* 468 U.S. 517, 539 (1984). Personal effects of inmates are routinely searched, seized, and placed in official custody. *Id*. at 540 (holding that claims related to missing property "have long been redressable in tort" and whether those remedies are "adequate" is a question for the "Takings and Due Process Clauses.")

Plaintiff's claim that his "membership dues" were unreasonably seized by Defendants does not give rise to a Fourth Amendment claim. *See Jackson v. SCI-Camp Hill,* No. 1:11-CV-1135, 2012 WL 3990888, at *6 (M.D. Pa. Sept. 11, 2012), *aff'd sub nom*. *Jackson v. SCI Camp Hill,* 530 F. App'x 150 (3d Cir. 2013) ("[C]ourts have [ ] refused to recognize an inmate's claim that the seizure of money from his inmate account violated the Fourth Amendment[.]") (collecting cases); *see also Gardner v. Rogers State Prison*, No. CIV. A. CV608-016, 2009 WL 29572, at *5 (S.D. Ga. Jan. 5, 2009) ("Even accepting as true Plaintiff's allegation that $1 was taken from his inmate reserve account, he does not state a valid

Fourth Amendment cause of action.").

Accordingly, Plaintiff's Fourth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Eighth Amendment

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id*. (citation omitted). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

### a. Venditti and Delfavero

Plaintiff claims that Venditti and Delfavero placed him at "unreasonable risk of substantial harm" when they intentionally mislabeled Plaintiff as "Jewish." *See* Am. Compl. at 30. While Plaintiff alleges that being "branded" Jewish endangered his life, health and well being "in a way no less significant than if they had called me an informer," *see* Am. Compl. at 21, he fails to allege that he suffered any actual physical injury, i.e., that he was actually attacked or assaulted. Fear of danger, without more, is insufficient to establish a "sufficiently serious" injury. *See Best v. City of N.Y.*, No. 11 CIV. 4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012) (dismissing the complaint where the plaintiff alleged that he feared his life was in danger because he was not held in protective custody, but did not allege that he was attacked or injured as a result of being denied protective custody status); *see also Newman v. Duncan*, No. 04-CV-395 (TJM/DRH), 2007 WL 2847304, at *5 (N.D.N.Y. Sept. 26, 2007) ("The law is clear that an inmate must demonstrate an 'actual injury' when alleging a constitutional violation."); *Cruz v. Hillman*, No. 01 CIV. 4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (citations omitted) ("Under the relevant case law, fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment."). "A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can be drawn that such inmate's safety is actually at risk." *Wilson v. Campbell*, No. 06-CV-0175 (GLS/RFT), 2008 WL 902187, at *5 (N.D.N.Y. Mar. 31, 2008) (citation omitted). For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Venditti and Delfavero are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Graham, Yard Supervisor Jay Doe, WC Doe #2

The Second Circuit has found that prisoners claiming detention under very cold temperatures may establish an Eighth Amendment claim of cruel and unusual punishment. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir.2001) (reinstating Eighth Amendment claims of frigid temperatures dismissed by district court); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir.1994) (denying motion to dismiss where prisoner alleged that officer had required him to spend two nights in a holding cell without bedding). Exposure to the "bitter cold of winter in northern-New York State" for "a substantial period of time" may constitute an Eighth Amendment claim. *See Corseli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Ifill v. Goord*, No. 03-CV-355, 2012 WL 176492, at *3 (W.D.N.Y. Jan. 20, 2012) (holding that "freezing temperatures can constitute the basis of an inhumane conditions of confinement claim."). "It is true that some district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, in conjunction with a deprivation of clothing and/or bedding, are insufficient to state a claim under the Eighth Amendment." *Nelson v. Plumley*, No. 9:12-CV-0422 (TJM/DEP), 2013 WL 1121362, at *10 (N.D.N.Y. Jan. 24, 2013) (collecting cases).

Here, Plaintiff claims that Defendants forced him to remain outside for one hour in "minus twenty degrees below zero." *See* Am. Compl. at 23. The Amended Complaint however, lacks any facts suggesting that Plaintiff suffered any physical injury or that he sought or required medical treatment. Further, while he states that he was exposed to "bone chilling cold," Plaintiff does not contend that he was forced outside without proper clothing or that he was deprived of a jacket or coat.

For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Graham,

33

Yard Supervisor Jay Doe, and WC Doe #2 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Bertonica

Plaintiff claims that Bertonica "forced" him to miss twenty medical meals causing "unknown damages." *See* Am. Compl. at 55. The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08–CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

Here, Plaintiff does not allege that his decision to refuse medical meals caused any adverse impact upon his health. Rather, Plaintiff asserts, in conclusory terms, that the condition caused "unknown damage." Moreover, Plaintiff has not plead that he was denied any food or meals. Accordingly, Plaintiff's Eighth Amendment claims against Bertonica are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F.      Ninth Amendment

Plaintiff claims that Annucci, Stewart, Rose, Bertonica, and Pitoniak violated the Ninth Amendment.  *See* Am. Compl. at 76.  The Ninth Amendment to the United States Constitution provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const., amend. IX. Courts from within the Second Circuit have recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims.  *Muniz v. Goord*, No. 9:04-CV-0479 (TJM/GHL), 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (citations omitted); *Newman v. Annucci*, No. 3:17-CV-0918 (LEK/DEP), 2018 WL 4554494, at *8 (N.D.N.Y. Sept. 21, 2018) (holding that the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action . . . [and] cannot serve as the basis for a § 1983 claim because such a claim must be based on the violation of a right guaranteed by the U.S. Constitution or federal law.").

According, Plaintiff's Ninth Amendment claims are dismissed.

### G.      Violations of DOCCS' Directives

Construing the Amended Complaint liberally, Plaintiff alleges that Annucci violated DOCCS' Directive #4202 because he "sought to establish tenets and practices of Rastafari." *See* Am. Compl. at 26.  Plaintiff also claims that Venditti and Delfavero failed to adhere to DOCCS' procedures and that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy violated DOCCS' Directive #4760.   *See id.* at 19, 66-75.

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS

35

Directive or prison regulation does not give rise to a federal constitutional claim) (citing *Fluent v. Salamanca Indian Lease Auth*., 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994)) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles); *see also McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.") (citation omitted).

Accordingly, Plaintiff's constitutional claims based upon the failure to adhere to DOCCS' directives are dismissed.

### H.    Fourteenth Amendment

#### 1.    Equal Protection

The law related to the Equal Protection Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 15-16. In the December Order, the Court held:

> Here, Plaintiff claims that Rastafarians represent a "minority religious group" and are "viewed as primitive" and subjected to discrimination. Compl. at 6-7. Plaintiff failed to identify any similarly situated inmates who were treated differently based upon their religious beliefs. Indeed, the Complaint lacks any facts supporting this conclusion and thus, fails to state an equal protection claim. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014) (finding that the plaintiffs failed to plead an equal protection claim based upon religion because nothing in the complaint suggested that similarly-situated inmates of other faiths were treated more favorably than the plaintiffs, or that the plaintiffs were singled out for discriminatory treatment on account of their religion).

Dkt. No. 4 at 15-16.

### a. Tomandl, Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3

In the Amended Complaint, Plaintiff asserts the following equal protection claims:

- Tomandl allowed Christian and Muslim SHU inmates who wrote, pre-SHU release letters, to attend their religious services upon release;

- Venditti and Delfavero "added" similarly situated "new arrivals" of Protestant, Catholic, and Muslim faiths to the "Feed-up list of their faith" while Plaintiff's "Brethren" was prevented from delivering the Transfiguration Day sacramental meal;

- On December 27, 2015, Graham, WC Doe #1, and Tomandl allowed Protestant and NOGE groups to worship for over one hour and forty five minutes while Plaintiff was "walked in and out of the chapel;"

- On February 14, 2016, Graham, WC Doe #2, and Yard Supervisor Jay Doe allowed only five Rastafari inmates into the chapel at a time while Protestant inmates were allowed in the chapel "en masse;" and

- Similarly situated Protestant and NOGE prisoners were allowed to attend worship and study on December 25, 2016 while PG James Doe, Sgt. Doe, and WC Doe #3 deprived Plaintiff of the same opportunity.

*See* Am. Compl. at 17, 29, 30, 31, 32, 43, 44.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to the aforementioned equal protection claims from Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2018 WL 3130670, at *5 (N.D.N.Y. May 24, 2018) (holding that the plaintiff sufficiently alleged a claim

of discrimination in violation of the Equal Protection clause with facts suggesting that similarly-situated inmates were permitted to attend religious services on December 25, 2015 while Muslim inmates intentionally were denied the right to hold and attend services) (citing *Guillory v. Fischer*, No. 9:12-CV-00280 (LEK), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013) (finding that the plaintiff sufficiently pleaded an equal protection claim based upon the denial of Jewish services on one day because Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons). This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. For the reasons set forth in Part IV(C)(1)(4)(a) *supra*, the equal protection claim against Tomandl is dismissed.

### b. Pitoniak, Vanni, Porter, Annucci, and McCarthy

Plaintiff claims that Pitoniak, Vanni, and Porter discriminated and treated the CAU differently than "similarly situated organizations." *See* Am. Compl. at 76-80. Plaintiff also asserts that Annucci and McCarthy failed to protect the CAU "on par with all other similarly situated organizations and individuals" from discrimination and unequal treatment. *See* Am. Compl. at 80-81. As discussed in the December Order, the failure to identify similarly situated individuals who were treated differently is fatal to an equal protection claim. Accordingly for the reasons set forth in the December Order, the equal protection claims against Pitoniak, Vanni, Porter, Annucci, and McCarthy are dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Due Process

To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir.2004); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996). "A prisoner's liberty interest is implicated by prison discipline," "only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'. . . ." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citations omitted).

### a. Mallozzi

Plaintiff claims that Mallozzi made false statements during the investigation into his grievances in violation of his due process rights. *See* Am. Compl. at 44, 60-61. It is well-established that prison grievance procedures do not create a due-process-protected liberty interest. *See, e.g., Mateo v. Fischer*, 682 F.Supp.2d 423, 431 n. 3 (S.D.N.Y. 2010); *Mastroianni v. Reilly*, 602 F.Supp.2d 425, 437 (E.D.N.Y. 2009); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y. 2003). Thus, Mallozzi's failure to properly respond to his grievances did not violate Plaintiff's constitutional rights. *See Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases).

Accordingly, Plaintiff's due process claims against Mallozzi are dismissed pursuant to

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b.    Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy

Plaintiff claims that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy failed to adhere to Directive #4760, in violation of his due process rights.  *See* Am. Compl. at 82.  As discussed *supra*, section 1983 claims based on violations of prison rules are subject to dismissal.  Thus, to the extent that Plaintiff claims that his due process rights were violated because of a liberty interest created by DOCCS' directives, that claim is dismissed.  *See Turner v. Sidorowicz*, No. 12-CV-7048, 2014 WL 641454, at *10 (S.D.N.Y. Feb. 18, 2014) (citing *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution[.]")).

### c.    Kelsey and McCarthy

After the disciplinary hearing, Kelsey found Plaintiff guilty of missing meals and ordered him to pay a $5.00 surcharge and $10.35 charge for the cost of the meals.  *See* Am. Compl. at 49, 51.  A "surcharge", without more, is not an atypical hardship.  *See Edwards v. Horn*, No. 10 CIV. 6194, 2012 WL 473481, at *9 (S.D.N.Y. Feb. 14, 2012) (holding that a $25 fine implicates the requisite liberty interest to state a due process claim).  Because Plaintiff has failed to plead that he was subjected to any disciplinary confinement or otherwise deprived a valid liberty interest, his Fourteenth Amendment Due Process claims related to the disciplinary hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.  *See id.* ("Because of the

absence of any protected liberty interest [. . . ] any failures by the hearing officer to conduct a thorough investigation [. . . ] do not support a cause of action for the denial of due process.") (citation omitted).

### I.    New York State Law and Constitutional Claims

#### 1.    Corrections Law

Plaintiff asserts state law claims, parallel to his free exercise claims, under New York Correction Law §§ 112 and 610.  Section 610 guarantees inmates "the free exercise and enjoyment of religious profession and worship" while incarcerated.  *See May v. Donneli*, No. 9:06-CV-437 (GLS/RFT), 2009 WL 3049613, at *4 (N.D.N.Y. Sept. 18, 2009).  Similarly, under Correction Law § 112, the Commissioner is empowered to promulgate regulations pertaining to religious service and ministrations.  *See U. S. ex rel. Washington v. Fay*, 217 F. Supp. 931, 933, n. 1 (S.D.N.Y. 1963).  Because the First Amendment free exercise and establishment law claims survive review, the Court shall exercise supplemental jurisdiction over the corresponding state law claims.

Plaintiff also claims that McCarthy and Annucci violated Correction Law § 116, which vests the Commissioner with the broad power to manage the fiscal affairs of correctional facilities, including inmate accounts.  *See Nardi v. Le Fevre*, 235 A.D.2d 602, 603 (1997).  Having dismissed all constitutional claims for monetary damages against Annucci and McCarthy, in their individual capacity, related to the CAU, the Court declines in its discretion to retain supplemental jurisdiction over Plaintiff's state law claims against McCarthy and Annucci related to the CAU.  *See* 28 U.S.C. § 1367(c)(3); *Doyle v. Suffolk Cty.*, 786 F.2d 523, 525 (2d Cir. 1986) ("With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims.").

41

### 2. Constitutional Claims

Plaintiff contends that Defendants violated Article I, §§ 1,3, 5, 6, 8, 9, 11 of the New York State Constitution. In light of the dismissal of Plaintiff's federal claims for deliberate indifference, due process, freedom of speech, and freedom to petition, the Court declines to exercise supplemental jurisdiction over the claims related to violations of Article I, Sections 5, 6, 8, and 9 of the New York State Constitution. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

With respect to Plaintiff's claims pursuant to Article I, §§ 1, 3, and 11, while New York recognizes a private cause of action for violations of the New York State Constitution, *Brown v. State*, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 235 (1996), that cause of action is only available, however, "where the plaintiffs have no alternative remedies that would protect their interests." *Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (citations omitted). Thus, because Plaintiff has viable First and Fourteenth Amendment Equal Protection claims under section 1983, Plaintiff's state law claims are dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. *Flores v. City of Mount Vernon*, 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999).

### J. Prospective Injunctive Relief

*In Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of

federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy of refusing delivery of Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No. 15-CV-00962*, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom.*, 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted).

In the Amended Complaint, Plaintiff seeks an order directing Annucci and McKoy to provide at least one hour of worship and study. *See* Am. Compl. at 37. Because the Court has directed a response to Plaintiff's claim that his First Amendment right to the free exercise of his religion was violated on December 27, 2015 because he was afforded only five minutes to worship in the chapel, the corresponding claim for prospective injunctive relief survives as well.

A different conclusion is reached however, with respect to the remaining requests for prospective injunctive relief. Plaintiff also seeks an order preventing Auburn's administration from allowing "general callouts" of all registered Rastafaris. *See* Am. Compl. at 37-38.

43

However, Plaintiff fails to explain how this injunction is necessary to prevent irreparable injury to his constitutional rights as alleged in the Amended Complaint. Because this claim for injunctive relief is unrelated to the constitutional claims set forth in the Amended Complaint, it is dismissed. *See Betlewicz v. Div. of New York State Police*, No. 1:12-CV-1158 (GLS/RFT), 2013 WL 2181248, at *3 (N.D.N.Y. May 20, 2013).

Finally, with respect to Plaintiff's request for an order preventing Auburn's administration from utilizing the "penalty box" for callouts in periods of inclement weather, as discussed *supra*, Plaintiff's Eighth Amendment claim related to the "penalty box," was dismissed. Accordingly, the corresponding claim for injunctive relief is also dismissed. *See Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *44 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 Fed. App'x 9 (2d Cir. 2015); *see also Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *15 (S.D.N.Y. Feb. 24, 2015).

### K.  Preliminary Injunctive Relief

In the Amended Complaint, Plaintiff also seeks preliminary injunctive relief. Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511. To obtain preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). However, when the moving

party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318 (GLS), 2016 WL 589703 at *1 (N.D.N.Y. Feb. 11, 2016).

Furthermore, the party seeking preliminary injunctive relief must establish a

relationship between the alleged irreparable harm claimed and the conduct giving rise to the complaint. *See Candelaria v. Baker,* No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted)*; see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and thus plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted). Here, the injunction sought is mandatory, and thus the Court will use the "clear and substantial" showing of a likelihood of success standard.

Plaintiff requests the following preliminary injunctive relief: (1) an order directing Annucci to immediately reinstate DOCCS' policy mandating that food be prepared by a faith group member; (2) an order precluding Annucci from using disciplinary measures to "force" Plaintiff to consume food prepared or served by homosexuals; (3) an order directing Annucci to reinstate the policy requiring Rastafari "brethren" to serve as clerks to prepare callouts, etc.; (4) an order enjoining Annucci, McKoy, McCarthy, and Schenk from posting the Rastafari "Family Day Event" on the commissary buy sheet; (5) an order suspending all aspects of Annucci's and Mallozzi's IGP; (6) an order directing Annucci to reinstate the CAU; (7) an order preventing Annucci from collecting funds from the CAU pending a full and complete forensic audit; (8) an order preventing Annucci from dispersing the CAU funds; and

(9) if Plaintiff should be transferred during the pendency of this lawsuit, an Order directing Annucci to transfer eight property bags containing Plaintiff's research, exhibits, books, and legal material with Plaintiff. *See* Am. Compl. at 61-64, 87-88.

The Court has thoroughly reviewed the Amended Complaint and requests for preliminary injunctive relief and finds that the requests are unrelated to the underlying claims that have survived this Court's review. Further, "the past allegations of misconduct stated in Plaintiff's Amended complaint, standing alone, are insufficient to support a finding of irreparable harm." *Ross v. Smith*, No. 9:18-CV-0039 (GLS/TWD), 2018 WL 5816301, at *2 (N.D.N.Y. Nov. 7, 2018). Thus, Plaintiff has not made any showing that he will suffer an injury that is neither remote nor speculative should the relief not be granted. Upon review, the Court finds that Plaintiff has failed to meet the heavy burden for a mandatory preliminary injunction. As a result, Plaintiff's requests for preliminary injunctive relief are dismissed.

### L.    Doe Defendants

Because Plaintiff asserts First and Fourteenth Amendment claims against corrections officers and officials whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against WC John Doe #1, WC John Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and/or WC John Doe #3, he must take reasonable steps to ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties. If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims

against those individuals will be dismissed.[16]

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that the Amended Complaint (Dkt. No. 15), and all exhibits annexed (Dkt. No. 1 at 15-28) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to add McKoy, Morris, Guenette, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Schenk, Vanni, Bertonica, Kelsey, WC John Doe #1, WC John Doe #2, WC John Doe #3, Tomandl, Pino, PG John Doe, Porten, Sgt. Doe, Yard Supervisor Jay Doe, PG James Doe, Porter, Pitoniak, and Silcox as defendants herein; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) section 1983 claims for monetary damages against defendants in their official capacity; (2) claims against Rose, Stewart, and Pino (3) First Amendment retaliation claims against Graham and Annucci; (4) First Amendment claims related to freedom of speech and to petition; (5) First Amendment claims related to the free exercise of religious freedom against Tomandl, PG James Doe, Sgt. Doe, WC Doe #3, Kelsey, and McCarthy; (6) Fourth Amendment claims; (7) Eighth Amendment claims; (8) Ninth Amendment claims; (9) constitutional claims related to violations of DOCCS' directives; (10) Fourteenth Amendment

---

[16]    Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period.  Fed. R. Civ. P. 4(m).  The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days.  N.D.N.Y. L.R. 4.1(b).

equal protection claims against Tomandl, Pitoniak, Vanni, Porter, Annucci, and McCarthy; (11) Fourteenth Amendment due process claims; (12) state law claims based upon Corrections Law § 116; and (13) New York State constitutional claims; it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) First Amendment retaliation claims against Bertonica, Pitoniak, Vanni, Porter, Schenk, and Silcox; (2) First Amendment claims related to the free exercise of religious freedom against Graham, Venditti, Delfavero, WC John Doe #1, Porten, Bertonica, Annucci, McKoy, Morris, and Guenette; (3) First Amendment Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe; (4) Fourteenth Amendment equal protection claims against Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, WC John Doe #3; and (5) corresponding state law claims; and it is further

**ORDERED** that DOCCS, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Kelsey, Tomandl, and Pino are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Amended Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by the remaining

49

defendants, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of Defendants WC John Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and WC John Doe #3. **Plaintiff's failure to timely serve those Defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on

Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 4, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge